CARMEN VICENTA RIVERA, Plaintiff and Appellee, *v.* HEIRS OF INOCENCIO DÍAZ, consisting of his widow JUANA ASIA LEBRÓN and his legitimate children FRANCISCO and VICENTE DÍAZ, Defendants and Appellants.

No. 3938. Argued December 15, 1926.—Decided April 5, 1927.

*Blondet & Campillo* for the appellants. *Eugenio Font Suárez* for the appellee.

MR. CHIEF JUSTICE DEL TORO delivered the opinion of the court.

This is an action for acknowledgment of a natural daughter and recovery of inheritance. The complaint contains the usual allegations in such cases. The answer is a general and specific denial of the complaint.

The case was tried and the court rendered judgment against the plaintiff, saying in its opinion that although the plaintiff showed that she was the daughter of the ancestor of the defendant heirs, born of his concubine Monserrate Rivera, and that he acknowledged her as such, she did not prove that Díaz was free to marry at the time of the conception of the plaintiff, a necessary condition for the acknowledgment of the daughter as a natural child.

The plaintiff moved the district court to reconsider its judgment and the motion was granted, the court then holding that in the light of the jurisdiction cited it had also to admit as proved the fact as to the capacity of the parents to marry and therefore sustained the complaint on the prayer for acknowledgment. Concerning the claim for inheritance the court held that while the right of the daughter was clear it was not in a position to make the special pronouncement prayed for. The court was asked to adjudge that the daughter was entitled to half of the pension which the widow of Inocencio Díaz was receiving under Act No. 68 of 1921 providing for "Pensions to the Members of the Insular Police Force."

The defendants appealed and alleged that in their opinion the court erred "in holding that the plaintiff is not required to prove that her parents at the time of her conception or birth were single and without any impediment whatever to marry."

The district court, after citing the cases of *Silva* v. *Salamanca et al.*, 14 P.R.R. 529; *Pérez Villamil* v. *Romano et al.*, 19 P.R.R. 832; *Delannoy* v. *Blondet*, 22 P.R.R. 219, and *Lange* v. *Aviles*, 2 S.P.R. 602, said:

". . . . . and the complaint is sustained on the ground that as Monserrate Rivera and Inocencio Díaz lived together for some time in Ponce; that during that time Carmen Vicenta Rivera was conceived; that she was born in Mayagüez, and that after her birth she continued having family relations with Inocencio Díaz who acknowledged her as his daugther, it having been proved that two months after the birth of the child her mother stated that Inocencio Díaz was single; I understand that that proof established also the presump-tion of the singleness of Inocencio Díaz, although the plaintiff is not required to show that fact, and therefore the court holds that Carmen Vicenta Rivera is the natural child of Inocencio Díaz with all the rights conferred on her by the Civil Code as such natural child."

It is evident that in order to acknowledge the status of natural to an illegitimate child it is necessary that its parents

be free at the time of conception or birth. On that basis the present action was brought and to that effect it is alleged in the complaint that while single Inocencio Díaz and Monserrate Rivera lived in concubinage, as a result of which the plaintiff was conceived and born. The question raised by the real difference in the contentions of the parties is as to whether or not the capacity of the parents to marry must be proved.

The first Porto Rican case cited is that of *Lange* v. *Aviles,* 2 S.P.R. 602. The opinion in that case was delivered by Mr. Chief Justice Quiñones and reads in part as follows:

"Considering, with respect to the violation alleged of the articles 325 and 327 of the Civil Code, that even if the complainant did not take care to demonstrate her civil status and that of Don Ulises Lange in the manner required by such articles to justify that they were in the legal condition to contract marriage at the date of the .conception of their children, Antonio and Luis Paulino, this circumstance can have no influence to destroy the justness of the sentence appealed from in declaring the said minor children natural children of Don Ulises Lange inasmuch as in the complaint the question of the legal capacity of the complainant and of Don Ulises to contract marriage at the date mentioned, having been raised and such circumstances not having been expressly attacked in the answer of the defendant succession nor any proof offered to the contrary, there exist in favor of said minors the legal presumption *juris tantum* of belonging to the class of natural children even without demonstrating the civil status in the form which the foregoing articles of the Civil Code require, and this in conformity with the jurisprudence announced by the Supreme Court of Spain, in the judgments of the 12th of November, 1858, and 11th of October, 1882, according to which that his parentage having been proved by the one who desires to be recognized as a natural child, as happens in the present case, it is not necessary to prove that his parents at the moment of conception or of birth could legally marry without dispensation because this matter is presumed until the contrary appears, for which reason section 1253 of the Civil Code cited in the second assigment of the appeal cannot be considered to have been violated." (Translation, 14 P. R. R. 532.)

The first of the two judgments of the Supreme Court of

Spain cited, or that of November 12, 1858, does not shed much light. The syllabus reads:

"Children who have been declared natural in respect to their mother are entitled to the rights corresponding to that class, except where it is shown that they are included in some exception."

The other, or that of October 11, 1882, is reported in 50 *Jurisprudencia Civil,* 110, and refers to a very interesting case. The *Audiencia Territorial* of Havana held that while the plaintiff children had proved their status as such, they failed to show that their parents could have married without dispensation at the time of their conception or birth, and reversed the judgment in favor of the children. These appealed to the Supreme Court of Spain and assigned sixteen errors. The 6th assignment said:

"Section 2 of the same title and *partida,* in so far as it establishes those cases where the burden of proof is on the defendant, the plaintiff being exempt from such obligation; and this happens where the defendant denies the plaintiff the status which the latter alleges in his complaint and alleges a fact in opposition to the legal admission of that status; that the plaintiffs when stating the facts and arguments thereon took for granted the legal capacity of their parents to marry, did not mention that point and confined themselves to establishing the circumstances which surrounded their birth, the care they always received from their father, the education he gave them and the acknowledgment which they received from their father of their natural filiation by virtue of the above acts; that it was the defendants who had, during the action and outside the answer to the complaint, where in any case the exception could only be properly taken, controverted the status which the plaintiffs alleged; and therefore it was incumbent on the defendants and not on their opponents to prove that point, spontaneously brought into the controversy in accordance with the aforesaid section which says: 'and furthermore he who denies that fact argues a matter of law and therefore must prove it.'"

The Supreme Court of Spain reversed the judgment of the *Audiencia Territorial* of Havana on the following ground:

"Considering that as the ground for the dismissal, as the only and indissoluble premise, was that while the plaintiffs had proved

to be the children of Esteban Santa Cruz de Oviedo, they failed to show that at the time of their conception or birth their parents could marry legally without dispensation, such judgment violated the provisions and the jurisprudence invoked in grounds 6, 7, 13 and 14, because once the filiation had been declared it was legally presumed that they belonged to the more general class of illegitimate children or that their progenitors were not incapacitated to marry unless otherwise shown.''

In the case of *Silva* v. *Salamanca et al.*, 14 P.R.R. 529, the *Lange Case, supra,* was cited with approval and in the course of the opinion it was said:

''. . . . . Jaime Salamanca testified that he lived in Guayama; that he knew Don Miguel Alemany y Ripoll, a bachelor, a brother on the side of deponent's mother dying on October 6, 1907, and that no degree of relationship existed between his brother and Isabel Silva. Thus the presumption arises that the decedent was and continued to be single to the time of his death and that there was no other obstacle to his marriage.''

The jurisprudence therein established is summarized as follows:

''It having been alleged in the complaint that there was no obstacle in the way of the father and mother to contract marriage, either at the time the natural children were conceived or at the time of the death of the alleged father of the natural children, because both were single and were not related to each other, and that allegation not having been expressly denied in the answer, and no evidence having been introduced to show the contrary, it is unnecessary to show the legal capacity of the plaintiff to contract marriage because there exists in favor of the children the legal presumption *juris tantum* of belonging to the class of natural children, and the paternity having been proved in the absence of evidence to the contrary, it will be presumed that the parties at the time of conception or birth could have legally married without a dispensation.''

Later in the case of *Pérez Villamil et al.* v. *Romano et al.*, 19 P.R.R. 832, this court said:

·''The appellants also allege that the complainants failed to show at the time of the trial that at the time of their conception their parents were both single and able to contract marriage. We have held in several cases that a person must be presumed to be single

until the contrary is shown, but it must be remembered that this is not a suit for filiation, where requisites of bachelorhood are prescribed, but is a suit for the annulment of a will and the declaration of the complainants as heirs. They are relying on their previously acknowledged status and the burden of showing that their parents had no right to marry would be cast on the other side."

In the last case cited by the district court, that of *Delannoy* v. *Blondet*, 22 P.R.R. 219, this court said:

"The sworn allegation of the complaint that María Teresa Delannoy and Carlos H. Blondet were single and without lawful impediment to marry at the time of the conception and birth of the plaintiff was not specifically denied or controverted in the answer, therefore it must be taken as true for the purposes of the action.

"But the fact is that the plaintiff introduced evidence in support of that allegation of the complaint, consisting in the testimony of María Teresa Delannoy to the effect that sexual relations existed between her and Blondet for a period of eight or ten months, both of them being single, and that she was single also when the offspring of such relations was born.

"Even if there had been no evidence concerning the legal capacity of Teresa Delannoy and Carlos Blondet to contract marriage at the time the plaintiff was conveived and born, such capacity would have to be presumed in the absence of proof to the contrary, according to the jurisprudence laid down by this court in the cases of *Lange* v. *Aviles,* II S.P.R. 611, and *Silva* v. *Salamanca et al.,* 14 P.R.R. 529."

The appellants review in their brief the cases cited and contend that they are dissimilar to the present case and therefore inapplicable. They also allege that even were this not so, the jurisprudence laid down therein was abandoned by this court, citing the cases of *Montalvo* v. *Montalvo,* 25 P.R.R. 800, and *People* v. *Ramos,* 29 P.R.R. 19.

It appears from the *Montalvo Case, supra,* that this court determined that a complaint in an action of filiation which did not allege the capacity of the parents to marry was not sufficient; but it can not be inferred therefrom that this court abandoned the doctrine of presumption upheld in the said cases. On the contrary, it was said in the opinion:

"The impediment between guardian and ward is not susceptible of legal dispensation. Only the parent of the ward could relieve the parties of this disability, authorizing the marriage 'in a will or in a public instrument.' Yet Manresa maintains that not only in the event of this formal authorization is a child conceived out of wedlock within the code definition of a natural child, but even otherwise, given the possibility of such 'dispensation,' the same should be pre-sumed and the language of the code be construed to include all those whose legal disability might have been so removed. Commentaries, Vol. 1, page 535. If this proposition be sound it disposes conclu-sively of the contention made under the sixth and seventh assign-ments." *Montalvo v. Montalvo*, 25 P.R.R. 800.

The cited case of *People* v. *Ramos* supersedes in effect the doctrine previously laid down in *People* v. *Gutierrez*, 21 P.R.R. 65, but does not affect those cited by the trial judge. The fact that it was decided that in a criminal case of seduc-tion it was necessary to show the status of the singleness of the victim because it was one of the elements of the crime, does not necessarily destroy the jurisprudence established in the cited cases of *Lange, Silva, Pérez Villamil* and *Delannoy*.

Therefore, as the complaint alleged the capacity of the parents and it had been proved that they had lived in concubinage; that the plaintiff was born as a result of such relations and that the father and his family had openly admitted his paternity, it is to be presumed that the parents could marry lawfully at the time of the conception or birth of the plaintiff without dispensation, unless the contrary is shown by the defendants or appears from the evidence of the plaintiff.

In this last respect the appellants argue in their brief as follows:

"If we examine the documentary evidence introduced by the plaintiff we will find the certificate of the marriage of Juana Asia Lebrón with Inocencio Díaz which shows that on January 6, 1913, she married Inocencio Díaz who was a widower.

"When did he become a widower? The plaintiff has said noth-ing in that respect.

"From the testimony of the legitimate children of Inocencio Díaz we get the information that the latter had married the mother of said witnesses and that he divorced her.

"When did he divorce her? The plaintiff says nothing in that respect.

"Was he a divorced man at the time of the conception of the plaintiff or was Inocencio Díaz single or had he married a second time and therefore was he incapacitated to marry? These queries spring from the evidence of the plaintiff and the burden was on her to establish this fact; but she did nothing in that connection."

But the appellee answers in her brief, and in our opinion correctly thus:

"The appellants want to take advantage of the certificate filed by the plaintiff and appellee of the marriage of Inocencio Díaz with the defendant Juana Asia Lebrón, on January 6, 1913, in regard to the fact stated in that certificate that Inocencio Díaz was a widower. And they ask, When did he become a widower?

"In the first place we must say that the marriage certificate only shows, according to the constant jurisprudence of this Court, the fact which caused its issuance and the date thereof, but not the truth of the statements therein contained in regard to the condition or status of the married man.

"In the second place we will say that in accordance with the doctrine laid down by this Court that illegitimate children are presumed to be natural children unless otherwise shown, that it is to be presumed that Inocencio Díaz became a widower, should such a thing be a fact, that nothing was shown at the trial on that point, before the birth of the minor Carmen Vicenta Rivera, or that he married or became a widower after the birth of the said minor.

"The appellants endeavor to take advantage of the testimony of the legitimate children of Inocencio Díaz on his marriage with and divorce from the witnesses' mother, and ask: When was he divorced?

"Though the appellants allege that the plaintiff keeps silent on that point, we maintain that the witnesses answer such question categorically.

"The witness Francisco Díaz, eldest legitimate child of Inocencio Díaz, says that he is 32 years old and testifies that his father divorced his mother 'when he was little.'

"If we bear in mind that the minor Carmen Vicenta Rivera was born on May 5, 1912, and that according to his testimony Francisco

Díaz was born in 1893, we must admit that at the time of the birth of Carmen Vicenta Rivera, Francisco Díaz was 19 years old; and it is reasonable to think that Francisco Díaz when testifying that 'he was little' at the time of his parents' divorce, referred to a time far back from his 19th birthday, that is to say, the time when the minor Carmen Vicenta Rivera was born. Therefore, it is to be admitted that the divorce was decreed long before the birth of the plaintiff, and that if Inocencio Díaz had previously divorced that woman, there arose again the presumption of singleness unless otherwise shown, according to the jurisprudence of this Court in the case of Silva v. Salamanca, 14 P.R.R. 529.

"The appellants also ask whether Inocencio Díaz was a married man by a second marriage at the time of the plaintiff's birth. That is precisely what the appellants had to prove, but did not.

"But there is something else. When the trial court decided the case and dismissed the complaint because it had not been shown that Inocencio Díaz was single at the time of the conception of the minor Carmen Vicenta Rivera, the plaintiff, knowing the jurisprudence of this Court in the sense that it was not necessary to do so, filed a motion to reconsider based on the juridical aspect, and never thought of examining the stenographic record to find out whether or not the said points had been proved. But as soon as the case was ready for appeal; and on a deliberate examination of the record, we found that the testimony of Monserrate Rivera, the plaintiff's mother, fully showed that Inocencio Díaz was single at the time of the conception of the said child. Let us see. 'And as he was a free man, *that he was not a married man,* I accepted him. I did not know him to have another woman.'

"When was Inocencio Díaz a free man, *that he was not a married man?* When Monserrate Rivera *accepted him.* And what did Monserrate Rivera mean by *accepting him?* Going to live with him."

From whatever aspect the case might be considered, the judgment appealed from should be affirmed. Not only must it be presumed that the parents of the plaintiff were capacitated to marry at the time of her conception or birth, after the paternity and acknowledgment had been proved, but there is evidence in the record of such capacity.

Judgment affirmed.